IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | ) No. 11 C 8365 |
| ONSITE WOODWORK CORPORATION, | ) <br> ) Judge Virginia M. Kendall |
| Defendant. | ) <br> ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Chicago Regional Council of Carpenters (the "Union") filed suit against Defendant Onsite Woodwork Corp. ("Onsite"), pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185[1], to confirm the entry of an arbitration award. Onsite has moved for summary judgment. It asserts that confirmation is improper because there is no showing that any controversy exists regarding the validity of or their compliance with the award. For the reasons set forth below, the Court dismisses Onsite's Complaint.

### STATEMENT OF MATERIAL UNDISPUTED FACTS[2]

Onsite is an Illinois corporation that makes architectural woodwork, including wall panels, doors, trim, casework, and specialty furniture. (Doc. 14, Def. 56.1, ¶ 4.) It has been a Union shop

---

[1] The Union also attempts to bring its suit pursuant to Section 9 of the Arbitration Act, 9 U.S.C. § 1, *et seq*. However, it is well established in the labor law context that the standards of the Federal Arbitration Act are superseded by Section 301 of the Labor Management Relations Act. In seeking to confirm the arbitration award at issue here, recourse is to the LMRA, not the FAA. *See Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1244 (7th Cir. 1990).

[2] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Onsite's Statement of Uncontested Facts have been abbreviated to "Def. 56.1 ¶ or Ex. __, p. __."; and citations to the Union's Response to Onsite's Statement of Uncontested Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."

since 1982. (*Id.*) Onsite and the Union have entered into a collective bargaining agreement (the "CBA"). (*Id.* at ¶ 5.) In November 2010, the Union filed a grievance with Onsite. (*Id.* at ¶ 8.) The grievance alleged that when Onsite recalled Union members, who had previously been laid off, Onsite did not pay those members appropriate wages or benefits. (*Id.* at Ex. C.) The Union identified Roberto Roman, Josephine Vasquez, Jeremy Larsen, Carlos Contreras, Brent Karis, and Steve Seymore as Grievants. Each of these employees were recalled after a layoff which lasted six months or more, and upon recall, each of these employees was required to undergo a period of re-orientation. (*Id.* at ¶ 15.) The Union's Grievance was not resolved by the parties and proceeded to arbitration. (*Id.* at ¶ 12.)

> The arbitrator conducted a hearing and entered the following award:
>
> The grievance is granted in part and denied in part. Any grievant recalled from layoff after six months and removed from the bargaining unit must be reinstated and dues and initiation fees, if any, restored to them. Also, recalled employees designated as trainees must be made whole for any loss in pay or benefits. As there was no clear loser in this case, the arbitrator's fees and expenses must be shared y the parties.

(*Id.* at ¶ 13.) The arbitrator did not find that any specific grievants recalled from layoff were actually removed from the bargaining unit or designated as "Trainees." (*Id.*)

Under the CBA, "Trainee" is defined as "[a]n Employee who is a new hire in the orientation period and is not already a Union member." (*Id.* at ¶ 14.) Onsite employees are only designated as "Trainees" by Onsite for the period of time during which they are new, non-union employees undergoing their first period of orientation. (*Id.* at ¶ 16.) Once an Onsite employee completes his or her initial orientation period and joins the Union, they are paid Union wages and are not designated as a "Trainee" again. (*Id.* at ¶ 18.) They are not designated as a "Trainee" when they are rehired after a layoff. (*Id.*) An employee is also not removed from the Union, or the bargaining unit,

2

by virtue of being laid off and rehired by Onsite. (*Id.* at ¶ 19.) Upon recalling Union members after a layoff, Onsite employs them as Union members at Union wages with the same classification they held prior to the lay off. (*Id.*) Furthermore, Onsite does not designate recalled Union employees as "Trainees." (*Id.*)

Grievant Josephine Vasquez was hired as a Trainee in October 2009. (*Id.* at ¶ 21.) She was terminated before she ever completed her initial orientation period. (*Id.*) She never became a member of the Union and her classification never went beyond that of "Trainee." (*Id.*) She is not a Union member covered by the CBA. (*Id.*) Each of the five other Grievants are members of the Union. (*Id.*) After they joined the Union, Onsite, at all times, designated them as Union members and not non-union "Trainees." (*Id.*) When they were recalled after a layoff, the Union member Grievants were paid Union wages. (*Id.* at ¶ 22.) They were never removed from the collective bargaining unit. (*Id.* at ¶ 23. They were never subjected to any initiation fees upon recall. (*Id.* at ¶ 24.) The Grievants were required to undergo an additional round of orientation after being rehired following a layoff lasting six months or more. (*Id.* at ¶ 25.) Throughout this reorientation period, they continued to receive Union wages. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); s*ee also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). The non-moving party, therefore, cannot rely on mere conclusions and allegations to create factual issues. *Bladerston v. Fairbanks Morse Engine Div. Of Coltec Ind.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)).

Furthermore, judicial review of arbitration awards is extremely limited, and the merits of the arbitrator's decision will not be reviewed. *See Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S. Ct. 1724 (2001); *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Local 150,* 348 F.3d 671, 675 (7th Cir. 2003). "A reviewing court will enforce the arbitrator's award so long as it draws its essence from the contract, even if the court believes the arbitrator misconstrued its provisions." *United Food & Commercial Workers, Local 1546 v. Illinois-American Water Co.,* 569 F.3d 750, 754 (7th Cir. 2009) (internal quotations omitted).

**DISCUSSION**

Onsite does not contest the validity of the arbitration award entered in favor of the Union.[3] However, it argues that it is entitled to judgment as a matter of law with respect to the Union's Complaint because there is no dispute between the parties that would be resolved by confirming the arbitration award. Onsite argues that the arbitrator awarded the Union two benefits: (1) any grievant recalled from a layoff after six months and removed from the bargaining unit must be reinstated and dues and initiation fee, if any, restored to them; (2) recalled employees designated as trainees must be made whole for any loss in pay or benefits. (Doc. 13 at 6-10.) Onsite argues that it has not failed to comply with the award because none of the Grievants were improperly removed from the bargaining unit or designated as "trainees," with a corresponding loss in pay or benefits. (*Id.*)

Specifically, Onsite's Rule 56.1 submission identified the following key facts: (1) Once an Onsite employee completes his or her initial orientation period and joins the Union, they are paid Union wages (determined by the terms of the CBA) and are never designated as a "Trainee" again, even upon being rehired after a lay off, as the CBA specifically defines "Trainee" as a "new," non-union employee; (2) An employee is not removed from the Union or the bargaining unit by virtue of being laid off and rehired by Onsite. Upon recalling a Union member after a layoff, Onsite employs them as Union members, at the same classification as they held prior to being laid off, at Union Wages, and Onsite does not designate or otherwise treat recalled Union employees as

---

[3] Onsite originally contested the validity of the arbitration award on the basis that the arbitrator exceeded his authority in making the award after finding that the Union had failed to comply with the proper procedures for filing a grievance under the CBA. (Doc. 13.) However, in its reply brief, Onsite withdrew this argument and conceded the validity of the arbitration award because it admitted it failed to move the Court to vacate the arbitration award within the three month statute of limitations provided by 9 U.S.C. § 12. (Doc. 22.) Since this case is governed by the LMRA, and not the FAA, the statute of limitations in 9 U.S.C. § 12 is inapplicable here. However, the applicable statute of limitations is still only 90 days. *See Sullivan v. Gilchrist,* 87 F.3d 867, 871 (7th Cir. 1996). Accordingly, the Court finds that there is no dispute as to whether the award is valid.

"Trainees;" and (3) The above-described policies and practices were at all times honored with respect to the Grievants in this case.[4] (Doc. 14, Def. 56-1, ¶¶ 18-20.)

The Union does not contest these facts directly. Instead, it argues that Onsite has failed to comply with the award because it has required recalled employees, who previously passed an orientation period prior to their lay off, to pass another orientation period when recalled. (Doc. 20, at 7-8). This practice, according to the Union, runs afoul of the arbitrator's decision because "[t]he arbitrator found that by making employees that already completed their orientation period to start anew constituted a violation of the CBA." (Doc. 21, ¶¶ 18-20.)[5]

However, there is no support in the record for the Union's interpretation of the arbitrator's award. The arbitrator clearly found that it was proper, under the terms of the CBA, for Onsite to require a new orientation period for employees who were laid off for longer than six months and then recalled. Specifically, he stated that "if the Employer requires a new orientation period, i.e., treats individuals who have been on layoff more than six months as a new hire, then such requirement is not inconsistent with either Article I, Section 2 or Article VII, Section 1." (Def. Ex. 56-1, Ex. 1 at 12.) In fact, the arbitrator specifically noted that he was "at a loss to see how the [Onsite] policy,"

---

[4] Five of the six Grievants in this case were already union members when they were laid off. Upon recall, they were not designated as trainees or removed from the collective bargaining unit. Grievant Josephine Vasquez was originally laid off before she completed her initial orientation period. She never became a member of the Union. Accordingly, pursuant to the arbitrator's ruling, it is not improper to designate her as a "Trainee" upon recall. (*See* Def. 56-1, Ex. 1, at 12 ["any employees who were recalled after six months and designated a trainee, *and were still Union members,* should be made whole for any losses in wages or benefits"] [emphasis added].).

[5] The Union also objects to Onsite's use of a Declaration by Tim Fruin, Onsite's Vice President of Manufacturing, in support of its motion for summary judgment because the Declaration was not evidence that was presented to the arbitrator. (*See, e.g.,* Doc. 21, ¶ 18.) However, Onsite has not offered this Declaration to contest the validity of the award, they have offered it in support of whether or not they are currently in violation of the award. Therefore, the Court may consider the Declaration in determining whether or not to confirm the award. *See, e.g., Webster v. A.T. Kearney, Inc.,* 507 F.3d 568, 570-71 (7th Cir. 2007); *see also St. Aubin v. Unilever HPC NA,* No. 09 C 1874, 2009 WL 1871679, *2 (N.D. Ill. 2009).

which requires an individual who is recalled following a layoff of more than six months to have a new orientation, violates the CBA. (*Id.*)

Rather, as Onsite argues, the arbitrator merely held that Onsite would violate the CBA by designating a recalled Union member as a "Trainee" or by removing a Union member from the collective bargaining unit. (*Id.* at 12-13.) Since the Union has not rebutted Onsite's assertion that no employee was improperly designated as a "Trainee" or removed from the bargaining unit, there is no genuine issue of material fact as to whether Onsite is in compliance with the arbitrator's decision at this time. It is in compliance.

Since Onsite has complied with the award, it would be improper for the Court to confirm the arbitration award at this time. Article III of the United States Constitution restricts the judicial power of the federal courts to "cases" and "controversies." U.S. Const. Art III, § 2. In addition, the ripeness doctrine dictates that courts should decide only existing substantial controversies, not hypothetical questions and possibilities. *See Wisconsin Right to Life State Political Action Committee v. Barland,* 664 F.3d 139, 148 (7th Cir. 2011).

In applying these principles to requests to confirm arbitration awards between labor and management, the majority of courts hold that the award should not be confirmed where there is no live and actual dispute between the parties. *See, e.g., Derwin v. Gen. Dynamics Corp.,* 719 F. 2d 484, 492-93 (1st Cir. 1983); *Yellow Freight Systems, Inc. v. Local Union 710, International Brotherhood of Teamsters,* No. 93 C 7480, 1994 WL 665086, *2 (N.D. Ill. Nov. 16, 1994); *Local 2414 of the United Mine Workers of Am. v. Consol. Coal Co.,* 682 F. Supp. 399, 400 (S.D. Ill. 1988); *Steris Corp. v. Int'l Union, United Auto, Aerospace, and Agric. Implement Workers of Am.,* 489 F. Supp. 2d 501, 515 (W.D. Pa. 2007); *1199 SEIU United Healthcare Workers East v. Civista Medical*

*Center, Inc.,* No. DKC 10-0479, 2011 WL 310486, *4 (D. Md. Jan. 28, 2011); *but see National Football League Players Assoc. v. National Football League Mgmt. Council,* No. 08 civ. 3658, 2009 WL 855946, *3-4 (S.D.N.Y. Mar. 26, 2009).

In *Derwin,* the union did not allege that the employer had either repudiated or violated the award. On appeal, the First Circuit determined that confirmation of the award was not warranted because there was no concrete dispute between the parties, "rather the court [was] simply being asked to put its imprimatur upon an arbitral award in a vacuum." *Derwin,* 719 F.2d at 490. It determined that instead of confirming the award at that instant, the better approach would be for the parties to seek confirmation if and when an actual dispute arose in the future. *See id.* at 491-93. It further stated that:

> The federal substantive law subsumes the prudential values of Article III, which militate against ministerial confirmation of awards in the absence of a concrete dispute. Moreover, the reliance on arbitration to settle labor disputes is a central policy of federal labor law. To grant the requested confirmation at this juncture would risk injecting the courts improperly into the arbitration process, since absent a concrete dispute there is no way for the district court to know whether there is any matter which it can properly review and its order may merely serve to skew the bargaining balance between the parties.

*Id.* at 492. Following this logic, the district courts cited above found that an award should not be confirmed if there is no live controversy between the parties.

The Court finds the reasoning of these courts persuasive. While the Union seeks to use this action to expand the scope of the arbitrable award, there is no live controversy as to whether Onsite has complied with the actual award. The Union has not presented any evidence that when any Union members were recalled, they were designated as "Trainees." The Union has not presented any evidence that any Union members were removed from the collective bargaining unit. Accordingly,

it would be improper for the Court to take action and confirm the award at this time. Rather, the better course is for the Court to heed the prudential values set forth in Article III and avoid rendering a judgment that may merely serve to skew the relative bargaining power of the parties.[6] If a dispute arises in the future as to whether Onsite has improperly designated Union members as "Trainees" or removed Union members from the collective bargaining unit, the Union may seek confirmation at that time.[7]

## CONCLUSION AND ORDER

For the foregoing reasons, the Court dismisses the Union's Complaint, without prejudice, pursuant to Fed. R. Civ. P. 12(h)(3). Onsite's Motion for Summary Judgment is denied as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 12, 2012

---

[6] Even though Onsite framed their motion as one for summary judgment, it effectively became a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss based on lack of subject matter jurisdiction after they conceded the underlying validity of the award. As a result, the Court should dismiss the case, without prejudice, pursuant to Fed. R. Civ. P. 12(h)(3), as opposed to rendering judgment in Onsite's favor.

[7] Courts that have confirmed arbitration awards when there is no live controversy generally do so out of a concern that the plaintiff could be prejudiced if the statute of limitations for confirming the award expires before a controversy under the award arises. *See, e.g., National Football League Players Assoc.* 2009 WL 855946, at *3. This Court believes that the risk of prejudice is negligible. First, there is a five-year statute of limitations for confirming the award. *See Roughneck Concrete Drilling & Sawing v. Plumbers' Pension Fund, Local 130,* 640 F.3d 761, 765 (7th Cir. 2011). This period is more than sufficient to cover any dispute arising under the current CBA, as it expires in 2012. More importantly, even if the statute of limitations runs, the Union would not be deprived of its substantive rights under the award. An arbitrator's award, whether or not confirmed, can always be pleaded as res judicata in a subsequent suit. *See Pryner v. Tractor Supply Co.,* 109 F. 3d 354, 361 (7th Cir. 1997); *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 930 (7th Cir. 1986).

9